**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES DWYER,<br><br>        Plaintiff,<br><br>        v.<br><br>BLUE SEA PRODUCTS, LLC and THOMAS JACOB,<br><br>        Defendants. | Civil Action No. 18-15182 (ES)(MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

        Before the Court is Defendants Blue Sea Products, LLC ("BSP"), and Thomas Jacob's ("Jacob") (collectively "Defendants") motion to dismiss Count One and Count Three of Plaintiff James Dwyer's ("Plaintiff") Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 16). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (*See* D.E. No. 1-1 ¶¶ 8–11). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court GRANTS Defendants' motion to dismiss Count One and Count Three *with prejudice* and dismisses any remaining contractual claims against Jacob.

**I.    Background**[1]

        Plaintiff is the former president of BSP's New England Division in New Bedford, Massachusetts. (D.E. No. 1-1, Complaint ("Compl.") ¶¶ 2 & 8–9). Jacob is BSP's President and majority shareholder. (*See id.* ¶ 4). In April 2013, Jacob recruited Plaintiff and soon thereafter,

---

[1]     The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

1

on April 24, 2013, Plaintiff and BSP entered into an employment agreement (the "Agreement"). (*See id.* ¶ 9; D.E. No. 16-2, Ex. C).[2] Pursuant to the Agreement, Plaintiff was to receive a base annual salary of $250,000. (D.E. No. 16-2, Ex. C § 2). Plaintiff was also eligible to receive an Annual Profit Sharing Amount ("Profit Share") bonus calculated by an agreed-upon-formula. (Compl. ¶ 9).

In 2015, the agreed-upon formula was used to calculate Plaintiff's Profit Share of $130,079.05, which was to be paid by March 1, 2016. (*Id.* ¶ 10). However, Plaintiff did not receive the payment until the final week of December 2016, almost ten months late. (*Id.*). In 2016, Plaintiff's Profit Share was calculated to be $393,552.75. (*Id.* ¶ 11). BSP did not make a timely payment, even though the Employment Agreement called for payment to be made by March 1, 2017. (*Id.*). BSP promised to make the 2016 payment on numerous occasions throughout 2017. (*Id.* ¶ 12). After one of the missed deadlines passed, BSP claimed it could not pay the bonus because it did not have the funds. (*Id.*). Plaintiff alleges that despite this claim, Jacob had spent large sums of BSP funds on "overseas travel with non-BSP employees and for luxuries for himself and his family." (*Id.*). As of March 1, 2018, none of the 2016 bonus had been paid. (*Id.*).

Despite the Employment Agreement, BSP did not provide Plaintiff with the calculation or a payment of the 2017 Profit Share by the agreed-upon date of March 1, 2018. (*Id.* ¶ 13). Consequently, on April 4, 2018, Plaintiff filed a Wage Act Complaint with the Massachusetts Attorney General seeking payment. (*Id.* ¶ 14). The Attorney General subsequently issued a "right to sue" letter. (*Id.*). The following day, Plaintiff wrote to Defendants disclosing the filing with the Attorney General and offering to accept less than the full amount of statutory damages. (*Id.* ¶ 15). On April 12, 2018, Plaintiff tendered his resignation to Defendants via email due to

---

[2] The Court considers the Agreement because it is referenced by, and is integral to, the Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Defendants' failure to pay any of the 2016 or 2017 Profit Share. (*Id.* ¶ 16).

Several days after Plaintiff's resignation, BSP alerted Plaintiff that it had re-calculated the 2016 Profit Share and paid him $273,663.15. (*Id.* ¶ 17). Plaintiff now seeks $119,889.60 (the difference between the original calculation of $393,552.175 and the paid amount of $273.663.15), plus statutory interest of one percent per month for the 13-month delay in payment. (*Id.*). BSP also provided Plaintiff with its calculation for the 2017 Profit Share several weeks after the 2016 payment was made. (*Id.* ¶ 18.). According to Plaintiff, this calculation contained a gross exaggeration of expenses resulting in a paper loss, eliminating Plaintiff's Profit Share for 2017. (*Id.*). Plaintiff alleges the correct calculation should show Plaintiff earned a Profit Share of $242,766.60 for 2017, which should have been paid by March 1, 2018. (*Id.* ¶ 19). Plaintiff further asserts that BSP engaged in the same exaggeration of expenses resulting in an elimination of Plaintiff's 2018 Profit Share, which he calculates to be over $100,000. (*Id.*). Finally, Plaintiff claims he is entitled to 16 days of vacation pay, valued at $16,666.67. (*Id.* ¶ 22).

## II.     Legal Standard

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn

therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). However, the Court is not required to accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a rule 12(b)(6) motion, a court must consider only the complaint exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### III. Analysis

The parties make a number of arguments in favor of their respective positions. The Court addresses only arguments relevant to the disposition of Defendants' motion. As outlined below, the Court grants Defendants' motion because Plaintiff has failed to state a claim under the Massachusetts Wage Act and his intentional misrepresentation claim is barred by the economic loss doctrine.

#### A. Count One: Violation of the Massachusetts Wage Act

Defendants argue Count One should be dismissed because the Profit Share Plaintiff seeks to recover is not considered a wage under the Massachusetts Wage Act ("the Act"). (D.E. No. 16-1 ("Def. Mov. Br.") at 8). Thus, because the Profit Share is not a wage, Plaintiff cannot assert a claim for relief under the Act. (*Id.* at 11).

In opposition, Plaintiff points to *Ellicot v. American Capital Energy*, 906 F.3d 164, 169 (1st Cir. 2018), arguing that the Profit Share is covered by the Act because it is "arithmetically determined" and "due and payable." (D.E. No. 24 ("Pl. Rep. Br.") at 6). Specifically, Plaintiff

4

argues that the Profit Share is a wage covered by the Act because there is a specific agreed-upon formula to calculate the Profit Share and it became due on a specific date. (D.E. No. 24 at 6).

The Act "imposes liability on employers who fail to pay wages earned by their employees." *Ellicott*, 906 F.3d at 169. The purpose of the Act is to prevent the unreasonable detention of wages. *See Boston Police Patrolmen's Ass'n v. Boston*, 761 N.E.2d 479 (Mass. 2002). To state a claim under the Act "a plaintiff must show that (1) he was an employee under the Wage Act; (2) the compensation constitutes wages pursuant to the Wage Act; (3) the Wage Act was violated; and (4) any individual defendants were corporate officers as defined by the statue." *Ellicott*, 906 F.3d at 169.

With respect to the second element, the Act generally does not encompass bonuses but protects commission payments that are "due and payable" and "arithmetically determinable." *See Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 193 (D. Mass. 2010); *Okerman v. VA Software Corp.*, 871 N.E.2d 1117, 1122–25 (Mass. App. Ct. 2011). A commission, however, "must be based on the sales or revenue generated by the individual employee, as distinguished from a payment based on a percentage of the business's overall profits, which is not a commission." *Souminen v. Goodman Indus. Equities Mgmt. Grp., LLC*, 941 N.E.2d 694, 705 (Mass. App. Ct. 2011). Further, "Massachusetts courts have held that the term 'commission' refers to 'employees who would ordinarily be paid on a weekly basis . . . and for whom commissions constitute a significant part of weekly income.'" *Wilkie v. NETS, Inc.*, No. 023480, 2005 WL 3105692, *3 (Mass. Super. Ct. Oct. 16, 2005) (quoting *Com. v. Savage*, 716, 583 N.E.2d 276, 278 (1991)).

Conversely, a bonus based on a share of the business's overall profits is not a commission and therefore is not a wage under the Act. *Souminen*, 941 N.E.2d at 705 ("[W]e agree with the trial judge's conclusion that any money owed Suominen under such a profit-sharing arrangement

5

was not a 'commission' covered by the statute. The judge therefore correctly dismissed Suominen's Wage Act claim."); *see also Sterling Research, Inc. v. Pietrobono*, No. 02-40150, 2005 WL 3116758, at *12 (D. Mass. Nov. 21, 2005) (noting that "[g]enerally, bonuses are not 'wages earned' within the meaning of" the Act). Consequently, even when a share of the profits is "due and payable" and "arithmetically determinable," it is not a commission or a wage "for purposes of the Wage Act." *See Roma v. Raito, Inc.*, No. 13-10297, 2015 WL 1523098 at *7 (D. Mass. Mar. 31, 2015).

Here, Plaintiff "confuses the case law surrounding arithmetically calculable 'commissions' as distinguished from 'bonuses.'" *See id.* at *7. Specifically, Section 3 of the Agreement, captioned "Profit Sharing," states that BSP "shall pay to [Plaintiff] an amount (the 'Annual Profit Sharing Amount') equal to thirty-five percent (35%) (the 'Profit Sharing Percentage') of the Annual Net Profit of the New England Division.'" (D.E. No. 16-2 Ex. C ¶ 3(a)). The Agreement goes on to define "Annual Net Profit of the New England Division" as the "net profit (or loss) of the New England Division . . . calculated based upon the direct income and expense of the New England Division from such calendar year," less a pro-rata allocation of BSP's overall corporate overhead and "any cumulative losses of the New England Division from prior calendar years." (*Id.* at 3(c)(i)). In other words, the Profit Share provision of the Agreement specifically allowed Plaintiff to receive a bonus in the form of a share of the overall profits generated by BSP's entire New England Division, without regard to any revenue generated by Plaintiff himself. Under the case law discussed above, then, the Profit Share bonuses "are not commissions and are not wages for purposes of the Wage Act." *See Roma*, 2015 WL 1523098, at *7 (holding that a profit sharing plan is not a commission or a wage where it "expressly call[s] for a share of the profits [of the business]—not a percentage of a sales price from the sale of goods, services or real estate"); *accord*

6

*Souminen*, 941 N.E.2d at 705.

Because the disputed Profit Share amounts are not covered by the Act, Plaintiff cannot state a Massachusetts Wage Act claim upon which relief may be granted. Consequently, the Court dismisses Count One *with prejudice*.

### B. Count Three: Intentional Misrepresentation

Defendants contend that Plaintiff's misrepresentation claim is barred by the economic loss doctrine. (Def. Mov. Br. at 17–18). The Court concurs.

The economic loss doctrine "prohibits plaintiffs from recovering, in tort, economic losses to which their entitlement only flows only from a contract." *Id.* at 618. "In that regard, 'the economic loss doctrine defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic losses in tort. . . ." *Nieves v. Lyft, Inc.*, No. 17-6146, 2018 WL 2441769, at *18 (D.N.J. May 31, 2018) (quoting *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010)). Thus, "whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009); *Chen v. HD Dimension, Corp.*, No. 10-0863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010).

"An alleged misrepresentation is extraneous to an agreement when it breaches a duty 'separate and distinct from the performance' of the agreement's terms." *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (citation omitted). For instance, it is well established that the economic loss doctrine "does not bar claims for fraud in the inducement of a contract," because fraud in the inducement implicates an independent tort duty to refrain from misrepresenting a fact forming the basis of the contract, not a contractual duty.

7

*See, e.g.*, *Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) (citation omitted); *Grasso Foods, Inc. v. Wynn Environmental Sales Co.*, No. 17-6430, 2018 WL 3455479, at *3 (D.N.J. 2018) (finding that a fraud in the inducement claim is not barred by the economic loss doctrine because the claim is based on pre-contractual misrepresentations that are extrinsic to the parties' agreement); *Montclair State Univ.*, 2012 WL 3647427, at *4 ("Only those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim.").

By contrast, courts have applied the economic loss doctrine where the tort claim contemplated by the plaintiff is not extraneous to the contract, but rather is premised "on fraudulent performance of the contract itself." *Unifoil Corp. v. Cheque Printers & Encoders Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (internal quotation marks omitted). Thus, "[a]n act that is in breach of a specific contractual undertaking would not be extrinsic." *Emerson Radio Corp. v. Orion Sales, Inc.*, No. 95-6455, 2000 WL 49361 at *7 (D.N.J. Jan. 10, 2000); *see, e.g.*, *Chen v. HD Dimension, Corp.*, No. 10-0863, 2010 WL 4721514, at *9 (D.N.J. Nov. 15, 2010) (finding that the economic loss doctrine barred the plaintiff's fraud claim, where the complaint failed "to sufficiently allege a fraud separate and distinct from the performance of the [e]mployment [a]greement"); *see also King v. Hilton-Davis*, 855 F.2d 1047, 1051 (3d Cir. 1988) ( explaining that "[w]hen loss of the benefit of a bargain is the plaintiff's sole loss," the New Jersey Supreme Court has noted "that the undesirable consequences of affording a tort remedy in addition to a contract-based recovery were sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by" the contractual claims).

Here, Plaintiff's intentional misrepresentation claim is barred by the economic loss doctrine. As alleged by the Complaint, Plaintiff does not assert tortious conduct that is extrinsic

to the duties imposed by the existing Agreement, nor does Plaintiff allege that he was fraudulently induced to enter into the Agreement. (*See generally* Complaint). Rather, the Complaint alleges that BSP promised Plaintiff it would pay the Profit Share bonuses on numerous occasions throughout Plaintiff's term of employment, but BSP delayed and failed to make such payments. (*See id.* ¶¶ 11–13). Plaintiff contends that Defendants did this in order to misrepresent "their actual intent which was to wait until the end of the contract and then misrepresent the numbers and under pay (or not pay) [Plaintiff] his earned bonuses." (*See id.* ¶ 33).[3] In other words, the misrepresentations allegedly made by Defendants occurred in violation of rights and duties allegedly created by the Agreement (that Plaintiff would receive a Profit Share within 60 days after the end of each calendar year), and Plaintiff's resulting sole loss was the loss of the benefit of that bargain. Indeed, "the gravamen of Plaintiff's fraud claim—that Defendant[s] ultimately failed to perform in accordance with the Agreement—is identical to Plaintiff's breach of contract claim." *See Ribble Co., Inc v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 WL 6886869, at *3 (D.N.J. Nov. 22, 2016); (*compare* Compl. ¶¶ 28–31, *with id.* ¶¶ 33–34).

Consequently, Plaintiff's misrepresentation claim is premised "on fraudulent performance of the contract itself," *see Unifoil Corp*, 622 F. Supp. at 271 (quotation marks omitted), and is therefore barred by the economic loss doctrine. *See, e.g.*, *Nieves*, 2018 WL 2441769, at *18–19 ("Plaintiffs' fraud claim is barred by the economic loss doctrine, because Count Three is devoid of any allegations separate from Plaintiffs' breach of contract claim."); *Park*, 2016 WL 796890, at *2 (holding that the economic loss doctrine barred intentional and negligent misrepresentation

---

[3] The Court notes that while Count Three of the Complaint asserts that both Defendants "repeatedly promised [Plaintiff] that they would fully pay the bonuses earned by and owned by [Plaintiff]" (Compl. ¶ 33), the factual allegations of the Complaint allege that only BSP made the allegedly false promises (*see id.* ¶¶ 11–13). In any event, as discussed below, Plaintiff provides no factual allegations or law that would support the finding that his misrepresentation claim implicates a duty extrinsic to the contractual duties. Rather, Plaintiff merely recasts his breach of contract claim as a tort claim. *See, e.g.*, *Park v. Inovio Pharm., Inc.*, No. 15-3517, 2016 WL 796890, at *2 (D.N.J. Mar. 1, 2016).

9

claims because the plaintiff "recast[ed] the claim for breach of contract as tort claims"); *Chen*, 2010 WL 4721514, at *9. For these reasons, Count Three of Plaintiff's Complaint is dismissed *with prejudice*.[4]

### C. Remaining Claims Against Jacob

Defendants also request that the Court dismiss all remaining claims against Jacob. (Def. Mov. Br. at 18 n.5). Having determined that Counts One and Three must be dismissed as a matter of law, only Count Two—breach of contract and breach of the implied covenant of good faith and fair dealing—remains. The Agreement contains a choice of law provision stating that New Jersey law governs. (D.E. No. 16-2, Ex. C §19). "As a general rule, contract obligations are limited to the parties making them, and only parties to contracts are liable for their breach." *Intelnet Int'l Corp. v. ITT Corp.*, 2006 WL 2192030, *8 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (citing *Comly v. First Camden Nat'l Bank & Trust Co.*, 36 A.2d 591, 593 (N.J. Sup. Ct. 1944) ("[A]n action on a contract cannot be maintained against a person who is not a party to it.")). Thus, contractual claims can only be maintained against parties to the contract. *See id.* Moreover, it is also well established that "a corporation is an entity separate and distinct from its principals." *Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.*, 591 A.2d 661, 669 (N.J. Super. App. Div. 1991). "Consequently, an individual who signs a contract will not be personally liable if their [sic] execution is as an officer of a corporation." *Lexins, LLC v. Powerplace Software, Inc.*, No. A-4578-10T3, 2012 WL 1537431, at *2 (N.J. Super. Ct. App. Div. May 3, 2012).

Here, the terms of the Agreement make plain that only BSP and Plaintiff are parties to the contract. (*See* D.E. No. 16-2, Ex. C at 1 (noting that the Agreement is made "by and between BLUE SEA PRODUCTS, LLC . . . and JAMES DWYER")). Although Jacob signed the

---

[4] Because the Court finds this argument to be dispositive, the Court need not address BSP's alternative arguments.

Agreement on behalf of BSP in his official capacity (*id.* at 14), Jacob himself is not party to the Agreement, *see Lexins, LLC*, 2012 WL 1537431, at *2. Therefore, in the absence of any arguments or allegations that Jacob pierced the corporate veil, Plaintiff cannot maintain his contractual claims against Jacob. *See, e.g.*, *id.; Home Buyers Warranty v. Roblyn Dev. Corp.*, No. MER-L-464-05, 2006 WL 2190742, at *4 (N.J. Super. Ct. App. Div. Aug. 4, 2006). Therefore, the Court dismisses the contractual claims asserted by Count Two against Jacob. Plaintiff's remaining contractual claims may proceed as to BSP only.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion and DISMISSES Counts One and Three *with prejudice*. Plaintiff's remaining breach of contract claims under Count Two are DISMISSED as to Jacob and will proceed against BSP only. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**