**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES DWYER, <br><br> Plaintiff, <br><br> v. <br><br> BLUE SEA PRODUCTS, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 18-15182 (ES) (MAH) <br><br> MEMORANDUM OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff James Dwyer's ("Plaintiff") motion for partial reconsideration of the Court's Opinion and Order granting defendants Blue Sea Products LLC ("BSP") and Thomas Jacob's (together, "Defendants") motion to dismiss Count One of Plaintiff's Complaint *with prejudice*, and leave to amend Count One. (D.E. No. 43). Essentially, Plaintiff requests that the Court change the dismissal *with prejudice* of Count One to a dismissal *without prejudice* and with leave to amend. (*See* D.E. No. 43-1 ("Pl. Mov. Br.") at 6). The Court has reviewed the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is DENIED.

***Background.*** On August 7, 2019, the Court issued an Opinion and Order granting Defendants' motion to dismiss Count One (Violation of the Massachusetts Wage Act (the "Wage Act")) and Count Three (Intentional Misrepresentation) of Plaintiff's Complaint. (D.E. Nos. 39 & 40 (together, the "August 2019 Decision")). As the Court already set forth the factual background in that Opinion (D.E. No. 39 at 1–3), the Court assumes the parties' familiarity with the same and

incorporates those facts here. On August 21, 2019, Plaintiff timely filed the instant motion. (D.E. No. 43).

*Legal Standard.* "Whether brought pursuant to Federal Rule of Civil Procedure 59(e), or pursuant to Local Civil Rule 7.1(i), the scope of a motion for reconsideration is extremely limited, and such motions should only be granted sparingly." *Martinez v. Robinson*, No. 18-1493, 2019 WL 4918115, at *1 (D.N.J. Oct. 4, 2019) (citing *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011); *Delanoy v. Twp. of Ocean*, No. 13-1555, 2015 WL 2235103, at *2 (D.N.J. May 12, 2015)). As such, a motion for reconsideration is granted only when necessary "to correct manifest errors of law or fact or to present newly discovered evidence." *Bootay v. KBR, Inc.*, 437 F. App'x 140, 146 (3d Cir. 2011) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

Notably, reconsideration motions "may not be used to relitigate old matters, raise new arguments, or present evidence or allegations that could have been raised prior to entry of the original order." *Martinez*, 2019 WL 4918115, at *1. "Nor is a motion for reconsideration an opportunity to ask the Court to rethink what it has already thought through." *Walsh v. Walsh*, No. 16-4242, 2017 WL 3671306, at *1 (D.N.J. Aug. 25, 2017), *aff'd*, 763 F. App'x 243 (3d Cir. 2019). Accordingly, an order of the Court may be altered or amended pursuant to a motion for reconsideration only where the moving party establishes one of the following grounds for relief: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the [C]ourt [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

*Analysis.* Plaintiff does not contend that an intervening change in controlling law has occurred from the time this Court issued its August 2019 Decision. (*See generally* Pl. Mov. Br.). Nor does Plaintiff contend that new evidence not previously available has emerged. (*See id.*).

Instead, Plaintiff argues that his motion should be granted solely on the grounds that doing so would prevent manifest injustice. (*Id.* at 3–4).

The Third Circuit has not "adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018). However, the Third Circuit has "suggested that there is substantial, if not complete, overlap between the two concepts," *id.*, and courts within this District have explained that "manifest injustice will generally arise only where 'the Court overlooked some dispositive factual or legal matter that was presented to it,' or committed a 'direct, obvious, and observable' error," *see, e.g.*, *Martinez*, 2019 WL 4918115, at *1 (quoting *Brown v. Zickefoose*, No. 11–3330, 2011 WL 5007829, at *2 n.3 (D.N.J. Oct. 18, 2011)); *accord Nixon v. Robinson*, No. 18-15248, 2019 WL 1282576, at *2 (D.N.J. Mar. 18, 2019).

Here, Plaintiff asserts that the Court failed to consider the fact that "the additional compensation [was] based exclusively upon the revenue and profits that [Plaintiff] himself generated for the New England Division" as the "sole individual generating profits." (Pl. Mov. Br. at 4). To support this contention, Plaintiff relies on allegations asserted in a declaration, which he attaches to the instant motion. (*Id.*, Ex. A ("Pl's Decl.")). Particularly, Plaintiff now alleges that he was the founder and only employee of BSP's New England Division; that he brought his customers to BSP; and that he introduced new product lines to BSP. (*Id.* ¶¶ 3–7). Relying on these allegations, Plaintiff now argues that this case is similar to *Feygina v. Hallmark Health Systems, Incorporated*, No. 11-03449, 2013 WL 3776929 (Mass. Super. Ct. July 12, 2013), which held that incentive payments were commissions protected by the Wage Act, when a physician was employed by a company that agreed to pay her a base salary plus a percentage of the profits generated by her own medical practice. (Pl. Mov. Br. at 4).

However, this argument relies on alleged facts that were necessarily within Plaintiff's

3

personal knowledge from the start of this litigation. Plaintiff inexplicably never presented or even alluded to the allegations asserted in his declaration prior to the Court's August 2019 Decision. (*See generally* D.E. Nos. 1 & 22). Similarly, Plaintiff was able to, but did not, raise the legal argument now raised by his motion for reconsideration. In fact, Plaintiff did not even cite to *Feygina*, the case on which his entire argument now stands, in his opposition to Defendants' motion to dismiss. (*See generally* D.E. No. 22). As such, Plaintiff cannot possibly argue that the Court overlooked a dispositive factual or legal matter, when Plaintiff simply did not present said factual or legal matter for the Court's review. *See, e.g.*, *Martinez*, 2019 WL 4918115, at *2 (rejecting the plaintiff's new arguments and facts raised on a motion for reconsideration because they were previously available to him); *Gaines v. Busnardo*, No. 13-6566, 2015 WL 5771233, at *7 (D.N.J. Sept. 30, 2015) ("In interpreting the rule, courts have held that a judge can only 'overlook' matters as to facts and legal arguments which were appropriately presented to the court at the time the motion for which reconsideration is sought was initially decided."); *see also Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 339 (D.N.J. 1996) ("[The rule] explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel."). Nor, in any event, could Plaintiff argue that *Feygina*—an unpublished state trial court decision—is a dispositive legal matter. *Cf. Watkins v. DineEquity, Inc.*, No. 11-7182, 2013 WL 396012, at *2 (D.N.J. Jan. 31, 2013), *aff'd*, 591 F. App'x 132 (3d Cir. 2014) (noting that "an unpublished decision by an intermediate appellate court" is not a dispositive legal matter for purposes of a motion for reconsideration).

Rather, a fair reading of the instant motion shows that Plaintiff is merely attempting to take a second bite at the proverbial apple after his original theory failed. But motions for reconsideration "are *not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.

Supp. 2d 610, 613 (D.N.J. 2001) ("[T]he initial motion is the 'main event,' not a 'tryout on the road' to a motion for reargument." (citation omitted)); *accord Martinez*, 2019 WL 4918115, at *1. Accordingly, Plaintiff's motion necessarily fails on this ground alone. *See, e.g.*, *Lenox Corp. v. Robedee*, No. 15-1654, 2016 WL 3032686, at *2 (D.N.J. May 26, 2016) (denying reconsideration because the motion only "advance[d] arguments that [the movant] raised or could have raised previously"); *Gaines*, 2015 WL 5771233, at *7 (same); *see also Campbell v. New Jersey*, No. 16-3086, 2017 WL 5593778, at *6 (D.N.J. Nov. 21, 2017) (explaining that it is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices, nor rescue parties from their own errors).

Regardless, the Court sees no reason to change its judgment or grant leave to amend, because even taking these belated new assertions as true, Plaintiff's Wage Act claim still fails.[1] As the Court previously explained, the Wage Act

> generally does not encompass bonuses but protects commission payments that are "due and payable" and "arithmetically determinable." *See Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 193 (D. Mass. 2010); *Okerman v. VA Software Corp.*, 871 N.E.2d 1117, 1122–25 (Mass. App. Ct. 2011). A commission, however, "must be based on the sales or revenue generated by the individual employee, as distinguished from a payment based on a percentage of the business's overall profits, which is not a commission." [*Israel v. Voya Institutional Plan Servs., LLC*, No. 15-11914, 2017 WL 1026416, at *4 (D. Mass. Mar. 16, 2017).[2]]

(D.E. No. 39 at 5); *see also Souminen v. Goodman Indus. Equities Mgmt. Grp., LLC*, 941 N.E.2d 694, 705 (Mass. App. Ct. 2011) ("The term 'commission' is commonly understood to refer to compensation owed to those in the business of selling goods, services, or real estate, set typically

---

[1] While "leave [to amend] shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), "among the grounds that could justify a denial of leave amend are undue delay, bad faith, dilatory motive, prejudice, and futility," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[2] The Court notes that due to an oversight its prior Opinion incorrectly attributed this quote to *Souminen v. Goodman Industries Equities Management Group, LLC*, 941 N.E.2d 694, 705 (Mass. App. Ct. 2011).

5

as a percentage of the sales price." (citing Webster's New Universal Unabridged Dictionary 364 (2d ed. 1983))).

With this law in mind, Plaintiff's reliance on *Feygina* is entirely misplaced. In *Feygina*, the defendant company operated physician practices and employed doctors to see and care for patients. *Feygina*, 2013 WL 3776929 at *2. The plaintiff, a physician who operated her own medical practice, entered into an employment contract with the defendant. *Id.* Pursuant to the contract, the defendant was required to pay the plaintiff a base salary and an additional "incentive compensation equal to 100% of excess revenue over expenses . . . if [the plaintiff's] practice breaks even or has a surplus." *Id.* (internal quotations omitted). The term "revenue" was defined as "physician collections, including patient service revenue and HMO withhold returns"; in other words, the money that the plaintiff collected in exchange for the services she rendered. *See id.* Relying on this contractual language, the Massachusetts state court held that the incentive compensation promised to the plaintiff constituted wages under the Wage Act. *Id.* at *5. Particularly, the court found the defendant employer had "agreed to pay [the plaintiff] incentive compensation that was pegged to the amount of revenue that [her] own practice generated each year." *Id*. Thus, the court concluded that the "incentive compensation" was a commission "structured as additional compensation for success in generating revenues for [her employer], not as a profit sharing arrangement." *Id.*

By contrast, Plaintiff here was not running his own practice and, as defined by the Profit Sharing provision of Plaintiff's employment agreement (D.E. No. 55-1, Ex. 4 (the "Agreement")), the additional compensation is not a percentage of the revenue attributable to Plaintiff's individual efforts. Rather, the Agreement states that BSP "shall pay to [Plaintiff] an amount (the 'Annual Profit Sharing Amount') equal to thirty-five percent (35%) (the 'Profit Sharing Percentage') of the Annual Net Profit of the New England Division." (*Id.* ¶ 3(a)). The Agreement goes on to define

6

"Annual Net Profit of the New England Division" as the "net profit (or loss) of the New England Division before payment of the Executive's bonus, calculated based upon the direct income and expense of the New England Division for such calendar year," less a pro-rata allocation of BSP's overall corporate overhead and "any cumulative losses of the New England Division from prior calendar years." (*Id.* ¶ 3(c)(i)). Moreover, the Agreement makes clear that the Annual Net Profits of the New England Division includes profits generated through (i) "New Joint Customers"— customers who are originated through the "joint efforts of a representative of the New England Division and a representative of [BSP's] New Jersey headquarters"; (ii) "Existing Joint Customers," defined as "Aldi and Giant Eagle, who are currently customers of both the New England Division and [BSP's] New Jersey headquarters"; and (iii) "Inter-division Transfers of Inventory"—transactions in which the New Jersey headquarters transfer inventory to the New England Division to enable the New England Division to consummate a sale, and vice versa. (*Id.* ¶ 3(c)(i)–(ii) & Ex. A).

Thus, regardless of whether Plaintiff was the founder or the "sole employee" at the New England Division, the plain language of the Profit Sharing provision specifically contemplated that Plaintiff would receive a bonus in the form of a share of the overall profits generated by BSP's entire New England Division (which may include profits generated not just by Plaintiff, but by any other representatives of the New England Division and BSP's New Jersey headquarters for new or existing shared customers, as well as inter-division transfers), without regard to any specific sales or revenue generated by Plaintiff himself. Thus, unlike the incentive compensation in *Feygina*, the Profit Sharing provision here was not pegged to the revenue that Plaintiff himself generated each year, and therefore cannot be considered wages. *See Israel*, 2017 WL 1026416, at *4 (noting that for a payment to be considered a commission, and thus a wage, it "must be based

on the sales or revenue generated by the individual employee, as distinguished from a payment based on a percentage of the business's overall profits, which is not a commission").

Perhaps most tellingly, Plaintiff does not even attempt to distinguish *Roma v. Raito*, No. 13-10297, 2015 WL 1523098 (D. Mass. Mar. 31, 2015), a case that, as BSP argues, involved facts highly analogous to the facts here, (*see* D.E. No. 55 at 11–12). Like Plaintiff here, the plaintiff in *Roma* was hired to establish the defendant's New England district office. *Roma*, 2015 WL 1523098 at *1. The parties' employment agreement contained a "Profit Sharing/Bonus Program," which entitled the plaintiff to "4% of the New England district's profit after taxes" and losses from the prior year, if the defendant's profits exceeded a specified amount. *Id.* Distinguishing *Feygina*, the *Roma* court held that the money promised in the plaintiff's employment agreement did not constitute wages under the Wage Act because the agreement "expressly called for a share of the profits—not a percentage of a sales price from the sale of goods, services or real estate"; *i.e.*, a percentage of the revenue generated by the plaintiff. *Id.* at *7; *see also id.* at *8 ("It is undisputed that Roma's Letter Agreement called for a percentage of profits from the New England District Office (if Raito's profits exceeded $600,000), not incentive pay based upon revenues generated which might qualify as commissions under the Wage Act.").

Here, as in *Roma*, the Agreement expressly calls for a share of the profits—35% of the Annual Net Profit of the New England Division (Agreement ¶ 3(a))—,"not a percentage of a sales price from the sale of goods, services or real estate," *see Roma*, 2015 WL 1523098, at *7. Accordingly, as the Court previously held, "the Profit Share bonuses 'are not commissions and are not wages for purposes of the Wage Act.'" (D.E. No. 39 at 6 (quoting *Roma*, 2015 WL 1523098, at *7)).

In sum, because Plaintiff does not show a dispositive factual or legal matter that was previously presented to and ignored by the Court, Plaintiff fails to meet the exacting standard

required in a motion for reconsideration. And because amendment would be futile, Plaintiff's request for leave to amend must also be denied.

*Conclusion.* For the reasons set forth above, Plaintiff's motion is DENIED. An appropriate Order accompanies this Memorandum Opinion.

<u>s/Esther Salas</u><br>
**Esther Salas, U.S.D.J.**